UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF ALABAMA – SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>BIRMINGHAM COAL & COKE COMPANY, INC.,<br><br>Debtor. | CASE NO. 15-02075<br><br>CHAPTER 11<br><br>JUDGE TAMARA O. MITCHELL |
| In re:<br><br>CAHABA CONTRACTING AND RECLAMATION, LLC,<br><br>Debtor. | CASE NO. 15-02077<br><br>CHAPTER 11 |
| In re:<br><br>RAC MINING, LLC,<br><br>Debtor. | CASE NO. 15-02078<br><br>CHAPTER 11 |

**EMERGENCY MOTION FOR ORDER
AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL**

NOW INTO COURT, through undersigned counsel, comes Debtors and Debtors-in-Possession Birmingham Coal & Coke Company, Inc., ("BCC"), Cahaba Contracting & Reclamation, LLC ("CCR"), and RAC Mining, LLP ("RAC") (collectively, the "Debtors"), who file this motion (the "Motion") pursuant to Sections 105, 363 and 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") for the entry of an interim and final order authorizing the Debtor to use cash which may be "cash collateral", and providing adequate protection for the same, for the following reasons:

## BACKGROUND AND JURISDICTION

1. On May 27, 2015 (the "Petition Date"), the Debtors filed a Voluntary Petition for Relief (the "Bankruptcy Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama (this "Court"). The Debtors continue to operate their business as Debtors-in-Possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been appointed in these Bankruptcy Cases.

2. This Court has jurisdiction over these Bankruptcy Cases and this Motion pursuant to 28 U.S.C. § 1334. Consideration of this Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief sought is sections 105 and 363 of the Bankruptcy Code.

4. *Prepetition Secured Debt.* Prior to the Petition Date, Debtors are all obligated, either as Borrower or Co-Borrower or as Guarantors, to Regions for the following facilities:

Master Agreement dated June 27, 2012, among BCC, CCR, Regions Equipment Finance Corporation, an Alabama corporation ("**REFCO**") and Regions Commercial Equipment Finance, LLC, an Alabama limited liability company ("**RCEF**")(the "**Master Agreement**"), as amended, supplemented and/or modified by the following:

    (i)    Addendum No. 1 dated June 27, 2012 to Master Agreement dated June 27, 2012 by and among BCC, CCR, REFCO and RCEF

    (ii)    First Amendment to Master Agreement and Schedules dated December 20, 2012 by BCC, CCR, REFCO and RCEF and Regions Bank ("**Regions Bank**"), together with Agreement and

Consent of Guarantors dated December 20, 2012 by RAC and CanAm Coal Corporation, a Canadian corporation ("**CanAm**")

(iii) Addendum No. 2 dated April 18, 2014 to Master Agreement dated June 27, 2012 by and among BCC, CCR, REFCO and RCEF

(iv) Second Amendment to Master Agreement and Schedules dated April 18, 2014 by BCC, CCR, REFCO, RCEF and Regions Bank, together with Agreement and Consent of Guarantors dated April 18, 2014 by RAC and CanAM

(v) Equipment Finance Schedule No. EFA-8, dated April 18, 2014 to Master Agreement dated June 27, 2012 by BCC and CCR and RCEF

(vi) Equipment Finance Schedule No. EFA-9 dated April 18, 2014 to Master Agreement dated June 27, 2012 between BCC, CCR and RCEF

(vii) Third Amendment to Master Agreement and Schedules dated November 6, 2014 by BCC, CCR, REFCO, RCEF and Regions Bank, together with Agreement and Consent of Guarantors dated November 6, 2014 by RAC and CanAm

(viii) Fourth Amendment to Master Agreement and Schedules dated November 28, 2014 by BCC, CCR, REFCO, RCEF and Regions Bank, together with Agreement and Consent of Guarantors dated November 28, 2014 by RAC and CanAm

B. $3,500,000 BCC/CCR Revolver Evidenced by:

(i) Master Note dated December 20, 2012 in the stated principal amount of $2,500,000.00 from BCC and CCR in favor of Regions Bank

(ii) Note Modification Agreement dated September 20, 2013 (evidencing increase to $3,500,000.00) by BCC, CCR and Regions Bank, together with Agreement and Consent of Guarantor dated September 20, 2013 by RAC and CanAm

(iii) Second Note Modification dated April 18, 2014 by BCC, CCR and Regions Bank, together with Amendment and Consent of Guarantor dated April 18, 2014 by RAC and CanAm

(iv) Third Note Modification dated September 29, 2014 by RAC and Regions Bank, together with Agreement and Consent of Guarantor dated September 29, 2014 by BCC, CCR and CanAm

(v) Fourth Note Modification dated November 6, 2014 by RAC in favor of Regions Bank, together with Agreement and Consent of Guarantors dated November 6, 2014 by BCC and CCR and CanAm

C. $1,500,000 BCC/CCR Bridge Loan Evidenced by:

(i) Promissory Note dated November 28, 2014 in the stated principal amount of $1,500,000.00 by BCC and CCR in favor of Regions Bank

D. $500,000 RAC Revolving Loan Evidenced by:

(i) Master Note dated December 20, 2012 in the stated principal amount of $500,000.00 from RAC Mining, LLC, an Alabama limited liability company ("RAC") to the order of Regions Bank.

(ii) Note Modification Agreement dated September 20, 2013 by RAC and Regions Bank, together with agreement and consent of Guarantors dated September 20, 2013 by BCC, CCR and CanAm

(iii) Second Note Modification dated April 18, 2014 by RAC and Regions Bank, together with agreement and consent of Guarantors dated April 18, 2014 by BCC, CCR and CanAm.

(iv) Third Note Modification dated September 29, 2014 by RAC and Regions Bank, together with Agreement and Consent of Guarantor dated September 29, 2014 by BCC, CCR and CanAm.

(v) Fourth Note Modification dated November 6, 2014 by RAC in favor of Regions Bank, together with Agreement and Consent of Guarantors dated November 6, 2014 by BCC and CCR and CanAm

E. Obligations of each Debtor have been guaranteed pursuant to the following:

(i) Continuing Guaranty Agreement dated June 27, 2012 from RAC to REFCO and RCEF with respect to BCC and CCR Obligations under the Master Agreement, as amended by First Amendment to Continuing Guaranty Agreement dated December 20, 2012 by RAC in favor of REFCO, RCEF and Regions Bank

{BH257831.2} 5

(ii) Guaranty Agreement dated December 20, 2012 by BCC in favor of Regions Bank with respect to RAC obligations

(iii) Guaranty Agreement dated December 20, 2012 by CCR in favor of Regions Bank with respect to RAC obligations

F. Obligations of each Debtor to REFCO, RCEF and Regions Bank are secured by the following:

(i) All Equipment of BCC and CCR pursuant to Master Agreement (including but not limited to Schedules 8 and 9 thereto)

(ii) All Equipment, Accounts, Inventory of BCC and CCR pursuant to Security Agreement (accounts, inventory and equipment) dated December 20, 2012 by BCC and CCR in favor of Regions Bank, REFCO and RCEF

(iii) All Equipment of RAC pursuant to pledge incorporated into Continuing Guaranty Agreement dated June 27, 2012 from RAC to REFCO and RCEF with respect to BCC and CCR Obligations under the Master Agreement, as amended by First Amendment to Continuing Guaranty Agreement dated December 20, 2012 by RAC in favor of REFCO, RCEF and Regions Bank

(iv) All Equipment, Accounts, Inventory of RAC pursuant to Security Agreement (accounts, inventory and equipment) dated December 20, 2012 by RAC in favor of Regions Bank

(v) Secured Promissory Note and Agreement dated June 27, 2012 from RAC to BCC and CCR pursuant to Schedule 8 to Master Agreement

A. To secure their obligations to Regions under the Financing Documents, Debtors have granted Regions a first priority lien on and security interest in and to all of their rights, title and interests in and to the following property (the "**Prepetition Collateral**"): (i) all of Debtors' respective Equipment, Accounts, Accounts Receivable and Inventory, including proceeds thereof

## RELIEF REQUESTED

5. The accounts receivable and inventory belonging to the Debtors generate income which may constitute cash collateral within the meaning of section 363 of the Bankruptcy Code.

6. The Debtors do not have available sources of working capital to operate without the use of such cash collateral. Accordingly, the Debtors have an immediate need to use cash collateral in order to permit the continuation of its business and to manage and preserve the assets of the estate for the benefit of the creditors. The expenses that the Debtors seek to pay (outlined on the proposed Budgets attached hereto as **Exhibit A**) are reasonable and necessary.

## ADEQUATE PROTECTION

7. The Debtors will show that it is in the best interest of the estate that the cash collateral securing the claim of Regions be used to pay the operating expenses.

8. In addition, the Debtors are seeking an emergency preliminary hearing on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 approving the use of cash collateral and adequate protection for the same as to Regions, if required. The Debtors and Regions are working to present an agreed order to this Court at the Preliminary hearing.

9. In addition, the Debtors are requesting that a final hearing be scheduled on the Use of Cash Collateral and adequate protection therefore, and that notice procedures in respect to

the Final Hearing be established by this Court to consider entry of a final order granting this Motion.

10. Although the Debtors believe that there is an "equity cushion" that adequately protects the secured claim of Regions (and reserves the right to so argue in the event that circumstances so dictate), the Debtors currently propose the following additional adequate protection for the use of cash collateral of Regions:

- a continuing security interest in all account receivable, and proceeds generated after the Petition Date;

- a Replacement Lien on all accounts receivable, and proceeds, generated after the Petition Date;

- adherence to the Debtors' projection of operating expenditures, a copy of which is attached hereto as Exhibit A and to provide Regions with new Budgets periodically as needed to provide for changes in revenues or expenses.

11. By filing this Motion, the Debtors propose that all legal and equitable rights, if any, of the Debtors and Regions are preserved and deemed not waived, including, but not limited to: (a) the Debtors' right to seek a surcharge under section 506 of the Bankruptcy Code; (b) the rights of Regions to object to any future requests for authorization to use cash collateral; (c) the right of Regions to resist and defend against any attempts to seek a surcharge under section 506 of the Bankruptcy Code or to assert rights of setoff, compensation, and/or recoupment under section 553 of the Bankruptcy Code or otherwise; (d) the Debtors' rights to assert that the proceeds of all receivables and cash on hand do not constitute cash collateral as defined in section 363 of the Bankruptcy Code and that Regions is not entitled to adequate protection for the use thereof; (e) the rights of the Debtors to object to the proof of claim of Regions; and (f) the Debtors' rights under sections 510, 544, 545, 547, 548, 549, 550, 551 and 552 to avoid and/or prime any lien of Regions on the proceeds of all accounts receivable and the cash therefrom.

12. Rule 4001(b)(2) provides that a bankruptcy court may conduct a hearing on a motion under Section 363 of the Bankruptcy Code before expiration of a 14 day notice period as described therein and may authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. Pending a final hearing on this Motion (which the Debtor requests take place on or before 30 days from the Petition Date, subject to the Court's availability) the Debtors must use cash collateral until such final hearing is held.

13. Accordingly, the Debtors ask that this Court conduct an emergency interim hearing to consider the Debtors' requests to use cash collateral.

14. The Debtors propose that the final hearing be held on the Motion at least 14 days after service of the Motion. The Debtors submits that the Court's consideration of the Motion at an interim and final hearing held upon the notice proposed herein is consistent with and in accordance with the procedures set forth in Bankruptcy Rule 4001(b).

15. The Debtor also requests that this Court approve the form and manner of notice with respect to the preliminary and final hearing on the Motion. Notice of the Preliminary Hearing has been given to (i) the Office of the United States Trustee, (ii) RegionsBank, and (iii) all creditors and parties in interest as shown on the mailing matrix. As such, notice of the Preliminary Hearing complies with the requirements of the Bankruptcy Code and Bankruptcy Rules.

16. Debtor proposes to give and serve at least 14 days' notice of the hearing on the Final Order on the parties having been given notice of the Preliminary Hearing, to any party which has filed prior to such date a request for notice with the Court and to counsel for any statutory committee appointed pursuant to Bankruptcy Code section 1102. Objections to the

Final Hearing shall be in writing and filed with the Clerk of the Bankruptcy Court with a copy served upon C. Ellis Brazeal III, 1819 5th Avenue North, Suite 1100, Birmingham, Alabama 35203, attorney for the Debtors. Any objections by creditors or other parties in interest shall be deemed waived unless filed and served in accordance with this paragraph. The Debtors submit that such service and notice of the Preliminary Hearing and Final Hearing should be deemed good and sufficient.

WHEREFORE, Debtors respectfully request that this Court (a) after expedited consideration enter an Interim Order as requested herein, (b) schedule a Final Hearing on the Motion and a final date for the filing of objections thereto, (c) authorize the use of cash and rents which may constitute cash collateral and adequate protection for the same, (d) approve the form and manner of notice set forth herein on the Preliminary and Final Hearings on this Motion, (e) after the Final Hearing, enter a Final Order in a form substantively identical to the Interim Order and (f) grant to the Debtor other such relief as this Court deems good and proper.

\s\ *C. Ellis Brazeal III*
C. Ellis Brazeal III

**OF COUNSEL:**

**JONES WALKER LLP**
1819 5th Avenue North
Suite 1100
Birmingham, AL 35203
(205) 244-5237 Telephone
(204) 244-5400 Facsimile
ebrazeal@joneswalker.com

Mark A. Mintz (LA Bar No. 31878)[1]
Laura F. Ashley (LA Bar No. 32820)[2]
JONES WALKER LLP
201 St. Charles Ave., Suite 5100
New Orleans, LA 70170
(504) 582-8000 Telephone
(504) 582-8011 Facsimile
mmintz@joneswalker.com
lashley@joneswalker.com
*Proposed Attorneys for Debtor*

---

[1] Motion for pro hac vice admission will be filed shortly.

[2] Motion for pro hac vice admission will be filed shortly.

# Exhibit A

| Week Ending | 5/22/2015 | 5/29/2015 | 6/5/2015 | 6/12/2015 | 6/19/2015 | 6/26/2015 | 7/3/2015 | 7/10/2015 | 7/17/2015 | 7/24/2015 | 7/31/2015 | 8/7/2015 | 8/14/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Cash Collections | 1,495,168.71 | 551,191.78 | 897,718.23 | 985,833.52 | 931,414.40 | 992,662.40 | 979,434.00 | 1,028,836.20 | 1,478,836.20 | 1,044,836.20 | 1,028,836.20 | 1,028,836.20 | 1,028,836.20 |
| Total Labor | 133,575.07 | 180,726.95 | 224,922.85 | 180,726.95 | 146,877.06 | 175,547.26 | 219,743.16 | 172,047.26 | 138,197.37 | 172,047.26 | 138,197.37 | 250,093.05 | 138,197.37 |
| Total Equipment Leases | - | - | - | - | - | - | 22,000.00 | - | - | 43,487.36 | 71,644.74 | - | 20,809.50 |
| Total Equipment Financing | 455.54 | - | - | - | 351,839.78 | - | 11,000.00 | - | 455.54 | 352,665.50 | 740.26 | 60,505.37 | 455.54 |
| Total Equipment Repairs | 54,085.41 | 160,500.00 | 164,000.00 | 135,500.00 | 137,500.00 | 135,500.00 | 139,000.00 | 135,500.00 | 137,500.00 | 135,500.00 | 137,500.00 | 137,000.00 | 137,500.00 |
| Total Explosives | 246,534.15 | 162,500.00 | 162,500.00 | 162,500.00 | 162,500.00 | 121,250.00 | 130,000.00 | 130,000.00 | 130,000.00 | 130,000.00 | 130,000.00 | 130,000.00 | 130,000.00 |
| Total Fuel | 235,884.05 | 158,500.00 | 159,500.00 | 158,500.00 | 154,500.00 | 154,500.00 | 155,500.00 | 154,500.00 | 154,500.00 | 154,500.00 | 154,500.00 | 155,500.00 | 154,500.00 |
| Total Other Operating | 129,597.01 | 40,025.00 | 65,806.74 | 40,025.00 | 40,025.00 | 61,219.96 | 101,554.77 | 40,025.00 | 40,025.00 | 61,219.96 | 40,025.00 | 101,554.77 | 40,025.00 |
| Total Truckinhg | 161,414.98 | - | 115,724.00 | 94,724.00 | 94,724.00 | 94,724.00 | 115,724.00 | 94,724.00 | 94,724.00 | 94,724.00 | 94,724.00 | 115,724.00 | 94,724.00 |
| Total Royalties | - | - | - | - | - | 387,834.00 | - | - | - | 429,099.00 | - | - | - |
| Total Taxes | 2,519.99 | - | - | 54,189.50 | - | 15,879.00 | - | 63,203.00 | - | 16,154.00 | - | 64,355.00 | - |
| Total Professional Fees | 840.00 | 62,600.00 | 2,600.00 | 3,600.00 | 2,600.00 | 2,600.00 | 2,600.00 | 35,934.00 | 2,600.00 | 15,600.00 | 2,600.00 | 2,600.00 | 35,933.00 |
| Total G&A | 1,265.87 | 5,587.50 | 10,812.50 | 5,843.50 | 5,437.50 | 6,587.50 | 10,812.50 | 5,843.50 | 5,437.50 | 6,587.50 | 5,437.50 | 10,862.50 | 5,693.50 |
| Total G&A (CANAM) | 22,720.00 | - | 36,975.00 | - | - | - | 32,300.00 | - | - | 17,000.00 | - | 13,600.00 | - |
| Total Disburesemnts | 988,892.07 | 770,439.45 | 942,841.09 | 835,608.95 | 1,096,003.34 | 1,155,641.72 | 940,234.43 | 831,776.76 | 703,439.41 | 1,628,584.58 | 775,368.87 | 1,041,794.69 | 757,837.91 |
| Net Change in Cash | 506,276.64 | (219,247.67) | (45,122.86) | 150,224.57 | (164,588.94) | (162,979.32) | 39,199.57 | 197,059.44 | 775,396.79 | (583,748.38) | 253,467.33 | (12,958.49) | 270,998.29 |
| Cash Balance - BOP | (93,536.46) | 412,740.18 | 193,492.51 | 148,369.65 | 298,594.22 | 134,005.28 | (28,974.04) | 10,225.53 | 207,284.97 | 982,681.76 | 398,933.38 | 652,400.71 | 639,442.22 |
| Cash Balance - EOP | 412,740.18 | 193,492.51 | 148,369.65 | 298,594.22 | 134,005.28 | (28,974.04) | 10,225.53 | 207,284.97 | 982,681.76 | 398,933.38 | 652,400.71 | 639,442.22 | 910,440.51 |