UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | CASE NO. 15-02075-TOM-11 |
| BIRMINGHAM COAL & COKE COMPANY, INC., ET AL | CHAPTER 11 |
| Debtors. | JUDGE TAMARA O. MITCHELL |

**INTERIM ORDER ON MOTION AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(b)**

THIS CAUSE came before the Court at a preliminary hearing at 1:30 p.m. on May 28, 2015 (the "**Preliminary Hearing**"), to consider the Motion for Authority To Use Cash Collateral And Request For Emergency Hearing, [Docket No. 7] (the "**Motion**") filed on May 27, by Birmingham Coal & Coke Company, Inc., an Alabama corporation ("**BCC**"), Cahaba Contracting and Reclamation, L.L.C., an Alabama limited liability company ("**CCR**"), RAC Mining, LLC, an Alabama limited liability company ("RAC"), debtors and debtors-in-possession (collectively, the "**Debtors**"), pursuant to sections 105, 361, 362, 363 and 507(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 4001, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking the entry of an order granting, *inter alia*, the following relief:

a.      Authorization under section 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004 for the Debtors to use "**Cash Collateral**" (as defined in Section 363(a) of the Bankruptcy Code) the Debtors are holding or may obtain for: (i) general working capital purposes and general corporate purposes relating to the postpetition operations; and (ii) payment

of the costs and expenses associated with these chapter 11 cases (the "**Cases**"), all in accordance with the terms of the Debtors' proposed budget (the "**Budget**"), a copy of which is annexed hereto as **<u>Exhibit A</u>**;

b.      Authorization for the Debtors to perform such other acts as may be necessary pursuant to the provisions of this Interim Order and any final order granting the foregoing relief and such other relief as provided herein and in such final order (the "**Final Order**"; and together with the Interim Order, the "**Cash Collateral Orders**");

c.      Authorization for the Debtors to continue to use the Cash Collateral of Regions Bank ("**Regions Bank**"),  Regions Equipment Finance Corporation ("**REFCO**") and Regions Commercial Equipment Finance, LLC ("**RCEF**") ( sometimes collectively referred to herein as "**Regions**") in accordance with the provisions of this Interim Order;

d.      Authorization for the Debtors to use the proceeds of Regions' collateral in accordance with the Budget;

e.      Authorization for the Debtors to provide adequate protection to Regions pursuant to the terms of this Interim Order based upon the use of its cash collateral, separate and apart from any adequate protection payments authorized with regard to equipment financed pursuant to agreements with REFCO and RCEF;

f.      To vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of this Interim Order;

g.      The limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code; and

h.   To waive any applicable stay as provided in the Bankruptcy Code or the Bankruptcy Rules and provide for the immediate effectiveness of this Interim Order.

The Debtors having requested in the Motion that pending a final hearing on the Motion (the "**Final Hearing**"), and the granting of adequate protection to Regions on an interim basis; and upon finding that notice of the Preliminary Hearing was given, where possible, to: (a) United States Bankruptcy Administrator; (b) the Debtors' material prepetition and post-petition secured lenders or any agent therefor; (c) the holders of the 30 largest unsecured claims on a consolidated basis; (d) state and local taxing and regulatory authorities; (e) the Internal Revenue Service;  (f) all parties known by the Debtors claiming to have liens on or security interests in any of the Debtors' property;  and  (h) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"), in accordance with Bankruptcy Rules 2002, and 4001(b), (c) and (d); and upon finding that this Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334; and upon finding that venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Preliminary Hearing to consider the Motion on an interim basis having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief is fair and reasonable and in the best interest of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and good and sufficient cause appearing therefor, it is hereby found:[a]

A.   _Petition Date_.  On May 27, 2015 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States

---

[a] To the extent any portion of these findings constitutes a ruling of law, such portion shall constitute this Court's ruling with respect to the matters so-stated.
{BH258252.1}

Bankruptcy Court for the Northern District of Alabama (the "**Court**"), thereby commencing these Cases.

B.     *Debtors In Possession*.  Each of the Debtors is continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed in these Cases. The Debtors operate four coal mines, employing in excess of 140 individuals.

i.     *Real Property*.  BCC  leases certain of the land and mineral rights used in its mining operations.

ii.     *Personal Property*.  The Debtors have receivables and or certain contract or payment rights with various industrial and utility companies, and other customers that purchase their coal or use their services (collectively, the "**Receivables**").  The total outstanding balance of the Receivables on the Debtors' books exceeds $2.5 million.  In addition, the Debtors' Inventory has an estimated value of approximately $1.0 million in readily marketable coal.  The Debtors have cash of $1.12 million.

C.     *Committee*.  No official committee of unsecured creditors (the "**Committee**") has been appointed in these cases.

D.     *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

E.     *Notice*.  Notice of the Motion, the relief requested in the Motion, and the Preliminary Hearing was served by the Debtors on the Notice Parties.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested in the Motion, and the Preliminary Hearing: (i) was, in the Debtors'

{BH258252.1}

good faith belief, the best available under the circumstances; (ii) constitutes due and sufficient notice thereof; and (iii) complies with Bankruptcy Rules 4001(b) and 4001(c). No further notice of the relief sought at the Preliminary Hearing is necessary or required.

F. _Prepetition Secured Debt_. Subject to the provisions of this Interim Order, the Debtors admit they have the following prepetition secured obligations (as set forth more fully in the Motion):

Prior to the Petition Date, Debtors are all obligated, either as Borrower or Co-Borrower or as Guarantors, to Regions for the following facilities:

  i. BCC/CCR Equipment Financing Facility Evidenced by:

Master Agreement dated June 27, 2012, among Birmingham Coal & Coke Co., Inc., an Alabama corporation ("**BCC**"), Cahaba Contracting and Reclamation, L.L.C., an Alabama limited liability company ("**CCR**"), Regions Equipment Finance Corporation, an Alabama corporation ("**REFCO**") and Regions Commercial Equipment Finance, LLC, an Alabama limited liability company ("**RCEF**")(the "**Master Agreement**"), as amended, supplemented and/or modified by the following:

  (a) Addendum No. 1 dated June 27, 2012 to Master Agreement dated June 27, 2012 by and among BCC, CCR, REFCO and RCEF

  (b) First Amendment to Master Agreement and Schedules dated December 20, 2012 by BCC, CCR, REFCO and RCEF and Regions Bank ("**Regions Bank**"), together with Agreement and Consent of Guarantors dated December 20, 2012 by RAC and CanAm Coal Corporation, a Canadian corporation ("**CanAm**")

{BH258252.1}

(c) Addendum No. 2 dated April 18, 2014 to Master Agreement dated June 27, 2012 by and among BCC, CCR, REFCO and RCEF

(d) Second Amendment to Master Agreement and Schedules dated April 18, 2014 by BCC, CCR, REFCO, RCEF and Regions Bank, together with Agreement and Consent of Guarantors dated April 18, 2014 by RAC and CanAM

(e) Equipment Finance Schedule No. EFA-8, dated April 18, 2014 to Master Agreement dated June 27, 2012 by BCC and CCR and RCEF

(f) Equipment Finance Schedule No. EFA-9 dated April 18, 2014 to Master Agreement dated June 27, 2012 between BCC, CCR and RCEF

(g) Third Amendment to Master Agreement and Schedules dated November 6, 2014 by BCC, CCR, REFCO, RCEF and Regions Bank, together with Agreement and Consent of Guarantors dated November 6, 2014 by RAC and CanAm

(h) Fourth Amendment to Master Agreement and Schedules dated November 28, 2014 by BCC, CCR, REFCO, RCEF and Regions Bank, together with Agreement and Consent of Guarantors dated November 28, 2014 by RAC and CanAm

ii. $3,500,000 BCC/CCR Revolver Evidenced by:

(a) Master Note dated December 20, 2012 in the stated principal amount of $2,500,000.00 from BCC and CCR in favor of Regions Bank

{BH258252.1}

(b) Note Modification Agreement dated September 20, 2013 (evidencing increase to $3,500,000.00) by BCC, CCR and Regions Bank, together with Agreement and Consent of Guarantor dated September 20, 2013 by RAC and CanAm

(c) Second Note Modification dated April 18, 2014 by BCC, CCR and Regions Bank, together with Amendment and Consent of Guarantor dated April 18, 2014 by RAC and CanAm

(d) Third Note Modification dated September 29, 2014 by RAC and Regions Bank, together with Agreement and Consent of Guarantor dated September 29, 2014 by BCC, CCR and CanAm

(e) Fourth Note Modification dated November 6, 2014 by RAC in favor of Regions Bank, together with Agreement and Consent of Guarantors dated November 6, 2014 by BCC and CCR and CanAm

iii. $1,500,000 BCC/CCR Bridge Loan Evidenced by:

(a) Promissory Note dated November 28, 2014 in the stated principal amount of $1,500,000.00 by BCC and CCR in favor of Regions Bank

iv. $500,000 RAC Revolving Loan Evidenced by:

(a) Master Note dated December 20, 2012 in the stated principal amount of $500,000.00 from RAC Mining, LLC, an Alabama limited liability company ("RAC") to the order of Regions Bank.

{BH258252.1}

(b) Note Modification Agreement dated September 20, 2013 by RAC and Regions Bank, together with agreement and consent of Guarantors dated September 20, 2013 by BCC, CCR and CanAm

(c) Second Note Modification dated April 18, 2014 by RAC and Regions Bank, together with agreement and consent of Guarantors dated April 18, 2014 by BCC, CCR and CanAm.

(d) Third Note Modification dated September 29, 2014 by RAC and Regions Bank, together with Agreement and Consent of Guarantor dated September 29, 2014 by BCC, CCR and CanAm.

(e) Fourth Note Modification dated November 6, 2014 by RAC in favor of Regions Bank, together with Agreement and Consent of Guarantors dated November 6, 2014 by BCC and CCR and CanAm

v. Obligations of each Debtor have been guaranteed pursuant to the following:

(a) Continuing Guaranty Agreement dated June 27, 2012 from RAC to REFCO and RCEF with respect to BCC and CCR Obligations under the Master Agreement, as amended by First Amendment to Continuing Guaranty Agreement dated December 20, 2012 by RAC in favor of REFCO, RCEF and Regions Bank

(b) Guaranty Agreement dated December 20, 2012 by BCC in favor of Regions Bank with respect to RAC obligations

(c) Guaranty Agreement dated December 20, 2012 by CCR in favor of Regions Bank with respect to RAC obligations

vi. Obligations of each Debtor to REFCO, RCEF and Regions Bank are secured by the following:

(a) All Equipment of BCC and CCR pursuant to Master Agreement (including but not limited to Schedules 8 and 9 thereto)

(b) All Equipment, Accounts, Inventory of BCC and CCR pursuant to Security Agreement (accounts, inventory and equipment) dated December 20, 2012 by BCC and CCR in favor of Regions Bank, REFCO and RCEF

(c) All Equipment of RAC pursuant to pledge incorporated into Continuing Guaranty Agreement dated June 27, 2012 from RAC to REFCO and RCEF with respect to BCC and CCR Obligations under the Master Agreement, as amended by First Amendment to Continuing Guaranty Agreement dated December 20, 2012 by RAC in favor of REFCO, RCEF and Regions Bank

(d) All Equipment, Accounts, Inventory of RAC pursuant to Security Agreement (accounts, inventory and equipment) dated December 20, 2012 by RAC in favor of Regions Bank

(e) Secured Promissory Note and Agreement dated June 27, 2012 from RAC to BCC and CCR pursuant to Schedule 8 to Master Agreement

{BH258252.1}

G.	To secure their obligations to Regions under the Financing Documents, Debtors have granted Regions a first priority lien on and security interest in and to all of their rights, title and interests in and to the following property (the "**Prepetition Collateral**"): all of Debtors' respective Equipment, Accounts, Accounts Receivable and Inventory, including proceeds thereof; with the exception of certain equipment secured by purchase money security interests and certain certificated vehicles to which perfection is undetermined at this time.

H.	As of the Petition Date, the amounts due and owing to the Regions under the Financing Documents are as follows (collectively, the "**Regions Claim**"):

1)	Aggregate unpaid principal on the Financing Documents in the amount of $15,942,769.58;

2)	Accrued but unpaid interest on the Financing Documents as of the Petition Date in the amount of $62,572.49 and contractual pre-payment penalties of $368,339.60;

3)	Unliquidated, accrued and unpaid fees and expenses of Regions and its professionals incurred through the Petition Date, which amounts shall be reimbursed to Regions through the Budget.

4)	In addition to the above amounts there 3 unfunded Letters of Credit outstanding as follows:

(i) 301,935.50

(ii) 1,429,793.00

(iii) 37,374.35

I.	*Findings Regarding the Use of the Cash Collateral*.

i.	*Good Cause*. Good cause has been shown for the entry of this Interim Order.

ii.	*Immediate Need*. The Debtors require the immediate use of Cash Collateral to operate their business and maximize their prospects for a successful reorganization. The access of the Debtors to sufficient working capital and liquidity through the use of the Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtors.

{BH258252.1}

Absent the use of the Cash Collateral, the Debtors will not have sufficient sources of working capital to continue as coal mining and reclamation operators. The ability of the Debtors to pay their employees, conduct coal mining, sales and reclamation operations, maintain business relationships with vendors and suppliers, create new Accounts Receivable and Inventory, and otherwise finance their operations is essential to the Debtors' continued viability. Unless the Debtors are authorized to use Cash Collateral as provided in this Interim Order pending a final hearing on the Motion, the Debtors and their estates will suffer immediate and irreparable harm.

iii. *Fair and Reasonable Terms*. The terms of the use of the Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

iv. *Irreparable Harm*. The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed. The Debtors assert that it is in the best interest of each of their respective bankruptcy estates and their creditors that the Debtors be permitted to use Cash Collateral in the manner provided for herein.

J. _Findings Regarding the Need for Adequate Protection_.

i. The Debtors have requested the use of Regions' Cash Collateral. Regions does not consent to the use of its Cash Collateral except upon the terms and conditions of this Interim Order.

ii. The Debtors wish to provide adequate protection of the liens and security interests of Regions as set forth in this Interim Order.

iii. The Debtors acknowledge and agree that: (i) the Regions Claims are valid, binding and allowed claims against the Debtors' estates; (ii) the Regions Claims are

{BH258252.1}

secured by valid, enforceable, duly perfected, first priority liens on and security interests in the Prepetition Collateral (excluding certain Purchase Money Security Interests, and possibly certain certificated vehicles); and (iii) neither the Regions Claims nor the liens or security interests securing the Regions Claims are subject to avoidance or equitable subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED**, as follows:

1. **Objections Overruled**. All objections to the entry of this Interim Order are hereby overruled to the extent they have not otherwise been resolved or withdrawn.

2. **Authorization to Use of Cash Collateral**.

(a) Subject to the terms and conditions contained herein, the Debtors are authorized to use Cash Collateral through the earlier of (i) July 10, 2015, (ii) the occurrence of a Cash Collateral Termination Event (as defined below), and (iii) the entry of a final order authorizing the use of Cash Collateral (the "**Usage Period**"); provided, however, that such use of Cash Collateral shall only be authorized for the actual and necessary expenses of operating the Debtors' business as set forth in the Budget, which Budget shall be in form and substance acceptable to and approved by Regions in its sole discretion and shall only be amended or modified with prior written consent of Regions.

(b) Unless otherwise authorized by the Court:

(i) the amount of Cash Collateral which the Debtors may use during any given week, as set forth in the Budget (the "Usage Period"), shall not exceed in aggregate 120% of each major cost category, and 115% of total expenditures, set

{BH258252.1}

forth in the Budget; provided, however, that in addition to items set forth in the Budget, the Debtors shall be permitted to pay the actual expenses incurred for fees of the Office of the United States Bankruptcy Administrator (the "**BA Fees**"). In the event the Usage Period terminates in the middle of a week, the amount budgeted for that week shall be prorated accordingly.

(ii) Cash collections may not fall below 80% of the collections projected in the Budget, on a cumulative basis, for any 2 consecutive Usage Periods.

(iii) Cumulative Disbursements may not exceed 115% in any category and or 110% overall.

(iv) Any expenditures made for the repair of Equipment shall require the prior written consent of Regions if such repairs exceed $100,000 on any item of equipment on which Regions has a first priority lien, and, $35,000 on any item of equipment on which Regions does not have a first priority lien.

(vii) Debtors shall have the following reporting obligations to Regions: (1) weekly budget to actual report on the cash budget showing budgeted and actual amounts by detailed line item (not group summary) for the week ended and cumulative since the Petition Date, (2) weekly roll forward for accounts receivable and updated accounts receivable aging by customer, (3) weekly shipping detail showing number of loads, estimated tons and estimated selling price/revenue by customer for the prior week's activity, (4) regular updates to the cash collateral budget based on updated operating assumptions and rolling forward for a new 13-week period, with revised budget to be developed by the end of the first five business days following the month-end or more frequently if

{BH258252.1}

there is a material change to operations that would impact cash flow, (5) all reports to be received on each Tuesday for the prior week ended.

(c)    Notwithstanding anything in this Interim Order to the contrary, Cash Collateral shall not include: (i) proceeds of any use, lease, sublease, license or sale outside the ordinary course of business of any of the Debtors' assets (together, the "**Extraordinary Proceeds**").  Nothing in this Interim Order or any subsequent order concerning the extension of debtor in possession financing to the Debtors shall entitle the Debtors to use any portion of the Regions Collateral, and no lien or other interest may be granted in the Regions Collateral to any third party including but not limited to any debtor in possession lender.

3.    **Adequate Protection**.

(a)    <u>Adequate Protection Provided to Regions</u>.  Regions is entitled to receive adequate protection on account of its interests in the Prepetition Collateral pursuant to sections 361 and 363 of the Bankruptcy Code.

i.    *Replacement Lien*.  In consideration for the use of the Cash Collateral by the Debtors on and after the Petition Date, Regions is hereby granted a valid, perfected and enforceable continuing replacement lien and security interest (the "**Replacement Lien**"), equivalent to a lien granted under section 364(c) of the Bankruptcy Code, in and upon all assets of the Debtors existing on or after the Petition Date of the same nature and type as the collateral securing the Regions Claim, including, without limitation, all of the Debtors' accounts receivable, inventory, and equipment and such other collateral in which Regions had an interest prior to the initiation of these Cases whether such property was owned on the Petition Date or thereafter created, acquired or arising, and improvements, additions and extensions thereto, all

{BH258252.1}

replacements thereof, all books and records with respect thereto and all products and proceeds of the foregoing, specifically including any proceeds of the foregoing deposited in bank accounts opened prepetition by the Debtors, the accounts opened by the Debtor after the Petition Date and the accounts themselves, subject and junior only to the BA Fees, Professional Fees of the Debtor for legal and accounting services, up to Budgeted amounts to the same extent, validity, perfection, enforceability and priority of the liens and security interests of Regions in such collateral as of the Petition Date. Notwithstanding anything to the contrary herein, the Supplemental Lien shall not extend to the proceeds of any avoidance actions received by the Debtor or the estate pursuant to sections 544, 547, 548, 549 or 550 of the Bankruptcy Code ("**Avoidance Actions**"). ("Professional Fees" shall include the Debtors' legal fees and accounting fees awarded by this Court under 11 U.S.C. Sections 327, 328, 330, and 331.

        ii. *Supplemental Lien*. As additional adequate protection, and solely to the extent of any diminution in the aggregate value of the Debtors' use of Regions' Cash Collateral, Regions is hereby granted a valid, perfected and enforceable continuing supplemental lien and security interest (the "**Supplemental Lien**") in all of the assets of the Debtors of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof inclusive of all causes of action of any kind or nature. Notwithstanding anything to the contrary herein, the Supplemental Lien shall not extend to the proceeds of any avoidance actions received by the Debtor or the estate pursuant to Sections 544, 547, 548, 549 or 550 of the Bankruptcy Code.

        iii. *Treatment of the Adequate Protection Lien*. Each of the Replacement Lien and Supplemental Lien (together, the "**Adequate Protection Liens**") shall be

{BH258252.1}

valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to Sections 506(c), 510, 549, or 550 of the Bankruptcy Code.

iv. *Additional Liens*. The assets subject to the Adequate Protection Liens (the "**Post-Petition Collateral**") shall be in addition to all other rights of Regions under the Financing Documents, including its liens and security interests in the Prepetition Collateral. The Adequate Protection Liens shall not be: (A) subject or subordinate to (1) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (2) any liens arising after the Petition Date including, without limitation, any liens or security interests in favor of any federal, state, municipal or other government unit, commission, board or court for any tax liability of the Debtors, whether secured or unsecured, including property taxes for which liability is *in rem*, *in personam*, or both, except a tax of a kind specified in section 507(a)(8) of the Bankruptcy Code, or (3) any intercompany or affiliate liens of the Debtors; or (B) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

v. *Superpriority Claims*. As additional adequate protection and in consideration for the use of the Cash Collateral by the Debtors, Regions shall have a super-priority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code against all assets of the estates, except for (a) the causes of action and proceeds therefrom of Debtors or their estates under sections 544, 545, 547, 548, 549, 550 and 724(e) of the Bankruptcy Code and

{BH258252.1}

(b) the Debtors' rights, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual which for any reason cannot not be made the subject of the Post-Petition Collateral, with priority over any and all administrative expenses, diminution claims and all other claims against the Debtors now existing or hereafter arising, of any kind whatsoever (the "**Superpriority Claim**"), including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of Debtors, any successor trustee or any creditor, in these Cases or any Successor Cases, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of Debtors and all proceeds thereof; provided, however, the Superpriority Claim shall be subordinate only to the BA Fees and Professional Fees.

    vi.  Notwithstanding anything to the contrary herein, Regions may seek to extend its Supplemental Lien and Superpriority Claim to the Avoidance Actions.

    vii.  *Financial Information*. As additional adequate protection of Regions' security interests in the Cash Collateral, the Debtors shall allow Regions, (including its agents, contractors, appraisers, and financial advisors) reasonable access during normal business hours to the premises, officers, employees, auditors, appraisers and financial advisors of the Debtors in order to conduct appraisals, analyses and/or audits of the Prepetition Collateral and the Post-Petition Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by Regions.  The Debtors shall furnish such other reports and

{BH258252.1}

information as may be reasonably requested from time to time by Regions, all such reports to be certified by the Debtors' chief financial officer or chief executive officer. From and after the entry of this Interim Order, the Debtors shall provide to Regions on Tuesday of each week (commencing with the second week after the Petition Date), a weekly report certified by the Debtors' chief financial officer and in the same form as the Budget indicating all receipts received and disbursements made by the Debtors in the week ending the prior Friday compared to the Budget and detailing any variances of more than 10 % and at least $10,000 from the expenditures and receipts in the Budget. Regions shall have independent access to the Debtors' accountant, financial advisor and investment banker, if any, to discuss matters relating to the Cases.

4. **Deposits of Cash Collateral**. All Cash Collateral shall be deposited in Debtors' Debtor-in-Possession account(s) to be established in accordance with the Court's Operating Order and\or the BA's guidelines, unless otherwise ordered by the Court.

5. **Accounting**. The Debtors shall at all times (a) sequester, segregate and account for all Cash Collateral that comes into their possession, custody or control, (b) keep and provide upon request records reasonably sufficient for Regions to determine the status of Cash Collateral collections and expenditures, and (c) shall provide to Regions copies of the monthly operating reports filed with this Court and with the Office of the BA.

6. **Deemed Request for Stay Relief**. This Interim Order shall be deemed to constitute a request by Regions for relief from the automatic stay with respect to the Prepetition Collateral and for adequate protection for the use of the Cash Collateral as of the Petition Date. Notwithstanding the foregoing, the Debtors and Regions may enter into a separate adequate protection agreement with respect to the Debtors' Equipment.

{BH258252.1}

7. **Modification of Automatic Stay**.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and the Superpriority Claim; (b) permit the Debtors to perform such other acts as are necessary to effectuate the terms of this Interim Order; and (c) the exercise of remedies by Regions to the extent permitted by this Interim Order.

8. **Perfection of Adequate Protection Liens**.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, mortgage, notice of lien, notations on certificates of title,  or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable nonbankruptcy law) the Adequate Protection Liens, or to entitle Regions to the priorities granted herein.  Notwithstanding the foregoing, Regions is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens, title or lien applications and other similar documents to perfect in accordance with applicable nonbankruptcy law or to otherwise evidence the applicable Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to Regions all such financing statements, mortgages, notices and other documents as Regions may reasonably request.  Regions, in its discretion, may file a

{BH258252.1}

photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument. No obligation, payment, transfer or grant of security under this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act (or similar statue or common law) or subject to any defense reduction, setoff, recoupment or counterclaim.

9. **Insurance**. Debtors shall insure their property and the Post-Petition Collateral against all risks to which it is exposed, including loss, damage, fire, theft and all other such risks, in an amount not less than the fair market value of such collateral, with such companies, under such policies and in such form as is appropriate for a business of a type similar to the Debtors using sound business judgment, and shall name Regions as loss payee on such policies, either as first loss payee, or as additional loss payee, depending upon the priority of Regions' lien on such property.

10. **Failure of Adequate Protection**. The terms and conditions of this Interim Order are intended to provide Regions with adequate protection for its interest in property of the Debtors. Nothing herein shall be construed as an admission by Regions that its interest in property of the Debtors, including Cash Collateral, is adequately protected. It is contemplated that the Debtor will seek adequate protection agreements with respect to the REFCO and RCEF obligations, and nothing in this Interim Order shall be deemed to affect such adequate protection agreements, nor shall any rights or remedies of Debtors, REFCO, or RCEF that existed pre-petition with respect to such obligations, be prejudiced or impaired in any way.

{BH258252.1}

11.     **Termination of Use of Cash Collateral**.

(a)     The Debtors' authority to use Cash Collateral pursuant to the terms of this Interim Order will terminate without any further action by the Bankruptcy Court seven (7) days after written notification sent by Regions to the Debtors, the Committee, if any, and BA of the occurrence of any of the following (each a "**Cash Collateral Termination Event**"):

(i)     the incurrence by the Debtors of administrative expenses of a type not set forth in the Budget or in an amount, or variance, not allowed under the Budget or otherwise approved by Regions;

(ii)     payment of claims or amounts or at the times not set forth in the Budget or in an amount, or variance, not allowed under the Budget or otherwise approved by Regions;

(iii)     the failure of the Debtors to timely pay all BA Fees;

(iv)     any of the Cases are dismissed or converted to a proceeding under chapter 7 of the Bankruptcy Code;

(v)     the earlier of (a) the date of the entry of an order of this Court appointing a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code); or (b) the date the Debtors file a motion, application or other pleading consenting to or acquiescing in any such appointment;

(vi)     the closing of a sale of all or substantially all of the Debtors' assets;

(vii)     the Court suspends the Cases under section 305 of the Bankruptcy Code;

(viii)     the Debtors fail to comply with, keep, observe or perform any of their agreements or undertakings under this Interim Order including;

(x)     entry of an order confirming a plan in the Cases;

(xi)     this Interim Order becomes stayed, reversed, vacated, amended, suspended or otherwise modified in any respect without the prior written consent of Regions;

{BH258252.1}

(xii) an adversary proceeding or contested matter is commenced by the Debtors, challenging the validity, extent, enforceability, priority or extent of the Regions' liens or claims; and

(xiii) imposition of orders, penalties or fines by any governmental agency or unit which does or could, if not cured promptly, result in the cessation of operations of the Debtors.

(b) *Rights Upon Termination Event*. Upon the expiration of such seven (7) day period, the automatic stay shall be lifted with respect to the Post-Petition Collateral and the Prepetition Collateral for the benefit of Regions to allow Regions to exercise all of its available rights and remedies against the Prepetition Collateral and Post-Petition Collateral under the Financing Documents and applicable law.

(c) *Termination Without Notice and Right of Temporary Use of Cash Collateral*. In the event a final order authorizing the use of the Cash Collateral has not entered on or before July 10, 2015, in form and substance acceptable to Regions, the Debtors' authority to use the Cash Collateral shall automatically terminate without notice or rights of the Debtors for temporary use thereof.

12. **Unauthorized Use of Cash Collateral**. Notwithstanding anything herein to the contrary, no proceeds of Cash Collateral or proceeds of Prepetition or Post-Petition Collateral shall be used for the purpose of: (a) objecting to, or contesting in any manner, or raising any defenses to, the validity, amount, extent, perfection, priority, or enforceability of the Prepetition Collateral, the Post-Petition Collateral, the Regions Claim or any liens or security interests with respect thereto, or any other rights or interests of Regions therein; (b) asserting any claims, defenses or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against Regions, including with respect to payments made pursuant to the Financing Documents; (c) asserting any other claims, defenses or causes of action against

{BH258252.1}

Regions or its respective agents, affiliates, subsidiaries, directors, office, representatives, attorneys or advisors; (d) preventing, hindering or otherwise delaying Regions' assertion, enforcement or realization on the Prepetition Collateral or Post-Petition Collateral; (e) seeking to modify any of the rights granted to Regions hereunder; (f) paying any amounts not otherwise provided for in the Budget; (g) invalidating, setting aside, avoiding or subordinating, in whole or part, any of Regions' liens on any Prepetition Collateral or Post-Petition Collateral; or (h) modifying Regions' rights hereunder. Should the Debtors use Cash Collateral for any purpose not authorized herein, the security interest and lien of Regions granted hereunder shall automatically attach to any assets acquired with such Cash Collateral.

13. **No Third Party Rights**. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

14. **No Deemed Control**. Regions shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of Debtors, notwithstanding its consent to this Interim Order and extending financial accommodations of any type, kind or nature under this Interim Order.

15. **Section 506(c) Claims and Waiver**.

(a) All rights to surcharge any Prepetition Collateral or Post-Petition Collateral under sections 105 or 506(c) of the Bankruptcy Code shall be and hereby are finally and irrevocably waived by the Debtors, and such waiver shall be binding upon the Debtors.

{BH258252.1}

(b)     The approval of this Interim Order by the Court shall be a conclusive and binding determination on the Debtors: (i) of the amount of the Regions Claim; and (ii) that Regions' security interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, have been duly perfected and are in all respects valid and enforceable first priority security interests and liens and not subject to any claim under section 552(b) of the Bankruptcy Code or otherwise.

16.     **Release and Waiver of Claims Against Regions**.  The Debtors hereby waive, release, and discharge Regions and its respective affiliates, agents, attorneys, officers, directors and employees (the "**Releasees**"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, Financing Documents, any aspect of the prepetition relationship between Regions and the Debtors, and any other acts or omissions by Regions prepetition relationship with the Debtors (collectively, the "**Released Claims**").  Further, the Debtors waive any and all rights to object to or contest the amount of Regions Claim or the amount, validity, extent, priority, perfection, or enforceability of the Regions' security interests in the Prepetition Collateral and the Debtors agree that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.

17.     **Rights Preserved**.  Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the Debtors, any Committee appointed by this Court and Regions are preserved.

18.     **No Waiver by Failure to Seek Relief**.  The failure of Regions to seek relief or otherwise exercise its rights and remedies under this Interim Order, applicable prepetition claims or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder,

{BH258252.1}

thereunder, or otherwise of the Regions, including Regions' right to assert at some later time that its liens and security interests in the Prepetition Collateral are not being adequately protected within the meaning of section 361 of the Bankruptcy Code.

19.    **Binding Effect of Interim Order**.    Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors and Regions, all other creditors of any of the Debtors or any Committee appointed by this Court in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

20.    **No Competing Liens**.    Except as set forth in this Interim Order, the Debtors shall not grant liens on, or security interests in the Prepetition Collateral or the Post-Petition Collateral to any other party, pursuant to section 364 of the Bankruptcy Code or otherwise, that are senior to or *pari passu* with Regions without Regions' prior written consent.

21.    **Restriction on Borrowing or Sale**.    Unless otherwise authorized by order of the Court following notice to Regions and such other parties as may be required by the Bankruptcy Code or the Court, Debtors shall not obtain any post-petition financing or sell or lease any of their assets, except in the ordinary course of business.

22.    **Survival**.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) to the extent authorized by law, dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.    The

{BH258252.1}

terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to Regions pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order. If any provision of this Interim Order is hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect the validity or authority of the Debtors' use of Cash Collateral under this Interim Order prior to such time, nor shall it affect the validity, priority or enforceability of the security interests and liens granted to Regions for such use, prior to the effective date of such modification, vacation or stay.

23.     **Enforceability**.  The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to the Cases.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.  To the extent necessary, findings of fact shall be deemed conclusions of law, and conclusions of law shall be deemed findings of fact.

24.     **Final Hearing; Notice of Final Hearing**.  Upon execution of this Interim Order and pursuant to Bankruptcy Rule 4001(d), the Debtors shall serve a copy of this Interim Order by first class mail on all creditors on the Notice Parties and all other interested parties requesting notice.  All interested parties are hereby given notice by service of this Interim Order of the effective date of this Interim Order.  The Final Hearing on the Motion and any timely filed objections to this Interim Order will be held before the Court on the **8th day of July, 2015, at 10:00 a.m.,** in Courtroom 3, Robert S. Vance Courthouse, 1800 Fifth Avenue North, Birmingham, AL, 35203.

{BH258252.1}

25. **Waiver of Any Applicable Stay**.  Any applicable stay (including, without limitation, any stay under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

26. **Headings**.  The headings of this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

27. **Notices**.  All notices, requests, demands, waivers and other communications required or permitted to be given under this Interim Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, or (c) sent by next-day or overnight mail or delivery or (d) sent by facsimile.

    i.    If to the Debtors to:

    Eric Hallmark
    Birmingham Coal & Coke Company, Inc.
    912 Edenton Street
    Birmingham, AL  35242
    ehallmark@canamcoal.com

    with a copy to:

    C. Ellis Brazeal III
    Jones Walker LLP
    1819 5th Ave. N., Ste. 1100
    Birmingham, AL
    ebrazeal@joneswalker.com

    ii.    If to Regions:

    Regions Bank
    1901 6th Ave. N.
    19th Floor
    Attn:  N. Ronald Downey, III
    Birmingham, AL 35203
    e-mail:  ron.downey@regions.com

    with a copy to:

{BH258252.1}

Joe A. Joseph, Esq.
Burr & Forman, LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203
Email: jjoseph@burr.com

**Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.


Dated:   May 28, 2015                                                    /s/ Tamara O. Mitchell
                                                                         Tamara O. Mitchell
                                                                         United States Bankruptcy Judge




Jointly prepared and presented by:


/s/ C. Ellis Brazeal III
Counsel for the Debtor


/s/ Joe A. Joseph
Counsel for Regions

{BH258252.1}