UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF ALABAMA – SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>BIRMINGHAM COAL & COKE COMPANY, INC.,<br><br>Debtor. | CASE NO. 15-02075<br>(Jointly administered with Case Nos. 15-02077 and 15-02078)[1]<br><br>CHAPTER 11<br><br>JUDGE TAMARA O. MITCHELL |

DEBTOR'S MOTION FOR AN ORDER, PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTOR TO ASSUME UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY, AND (2) SATISFY CURE AMOUNTS IN RESPECT THEREOF

COMES now, through undersigned counsel, Birmingham Coal & Coke Company, Cahaba Contracting & Reclamation, and RAC Mining, LLC (collectively the Debtors) as Debtors and Debtors-in Possession, , who file this *Motion for an Order, Pursuant to Section 365 of the Bankruptcy Code, (I) Authorizing the Debtor to Assume Unexpired Lease of Nonresidential Real Property, and (2) Satisfy Cure Amounts in Respect Thereof.* In support thereof, the Debtors  states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1]      The Debtor in Case No. 15-02077 is CAHABA CONTRACTING AND RECLAMATION, LLC and the Debtor in Case No. 15-02078 is RAC MINING, LLC.

{N3051766.1}

## BACKGROUND

2.      On May 27, 2015 (the "Petition Date"), the Debtors filed for relief pursuant to chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").  The Debtors are  operating their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3.      No trustee or examiner has been appointed.

4.      The Debtors are jointly administered pursuant to Bankruptcy Code § 105(a) and Federal Rule of Bankruptcy Procedure 1015(b).

5.      An Official Committee of Unsecured Creditors was appointed on June 17, 2015 (Dkt. No. 85).

6.      The statutory predicates for the relief requested herein are §§ 105(a) and 365 of the Bankruptcy Code.

## FACTUAL BACKGROUND

7.      Pursuant to section 365(d)(4)(A) of the Bankruptcy Code, an unexpired lease of nonresidential real property under which a debtor is a lessee will be deemed rejected if such lease is not assumed or rejected with 120 days of the commencement of the debtor's case.

8.      On May 31, 2013, the Birmingham Coal and Coke, Inc. ("BCC"), one of the Debtors herein, entered into that certain Coal Surface Mining Lease (the "Coal Lease") with Land Energy, Ltd. ("Land Energy").  Pursuant to the terms of the Coal Lease, Land Energy granted to BCC "the right, to the extent of the interest of [Land Energy] to mine, only by the surface-mining method, coal from all seams in the coal group that includes the Jefferson seam which coal is extractable by the surface-mining method from the lands located in Walker and Marion Counties, Alabama." See Coal Lease, page 1.  The Lease is attached hereto as **Exhibit A**.

9. In exchange for the right to mine the Coal Lease, BCC has agreed to pay, as rent, a royalty of: "For Surface Rights Only: three dollars and twenty-five cents ($3.25) per ton or Five percent (5%) of the Gross Sales Price, whichever is greater and For Fee Rights Only: six dollars and fifty cents ($6.50) per ton or Ten percent (10%) of the Gross Sales Price, whichever is greater of all merchantable coal mined and sold." See Coal Lease, pp.1-2, para. 2(A).

10. The Coal Lease became effective as of May 1, 2013 and expires on April 30, 2020.

11. Before the Petition Date, Land Energy began the process to terminate the Coal Lease pursuant to section 17(c). Land Energy and BCC agree that the Coal Lease was not terminated prepetition.

12. As of the Petition Date, BCC owed Land Energy $218,163.55 for payments that were due on May 20, and June 20[2], 2015 in lease payments.

13. To comply with the requirements of Section 365 of the Bankruptcy Code, the Debtors propose to pay Land Energy the sum of $218,163.55 (the "Cure Payment") over a six week period. If the Debtors meet anticipated production as reflected in the Cash Collateral Budget, then the Cure Payment spread over six weeks should not be a problem. However, due to the uncertainty of coal production taken from the Land Energy property, the Debtors retain their right to ask for the ability to make the Cure Payment over a ten week period. For the avoidance of doubt, the Debtors retain their right to ask for a longer cure period only if the amount of coal being mined from Land Energy's property decreases during the initial six week cure period.

---

[2] Even though the June 20 date is post-petition, the royalty payments under the Coal Lease are paid in arrears. Therefore the June 20 payment, while post-petition, related to coal mined prepetition. For the purposes of this Motion only, BCC agrees that the June 20 payment should be considered a prepetition payment subject to the Cure Payment discussed below.

{N3051766.1}

## BASIS FOR RELIEF

14.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  *See also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984).  This permits a debtor to "maximize the value of the debtors' estate" by assuming executory contracts and unexpired leases that "benefit the estate" and by rejecting those that do not. *Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001) (citation omitted); *see also Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed").

15.     The standard in approving the debtor's assumption or rejection of executory contracts and unexpired leases is whether such assumption or rejection (a) is a sound exercise of the debtor's business judgment, and (b) provides a benefit to the debtor's estate.  See *Bildisco & Bildisco*, 465 U.S. at 523 (recognizing the business judgment standard used to approve rejection of executory contracts).  Thus, a court must examine the Debtors' decision to assume or reject under the business judgment test to determine if assumption or rejection would be beneficial to the estates.  *In re Food City, Inc.,* 94 B.R. 91, 93 (Bankr. W.D. Tex. 1988); *In re Transamerican Natural Gas Corp.,* 79 B.R. 663, 667 (Bankr. S.D. Tex. 1987).

16.     To determine if a debtor has satisfied the business judgment standard, a court "is required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs*, 340 B.R. 222, 239 (Bankr. D. Del. 2006). Specifically, a court should find the decision to assume was made on "an informed basis, in good faith, and with the honest belief that the assumption . . . [i]s in the best interests of [the debtor]

and the estate." *In re Network Access Solutions*, 330 B.R. 67, 75 (Bankr. D. Del 2005). Under this standard, a court should approve a debtor's business decision unless the decision is the product of bad faith or a gross abuse of discretion. *See Lubrizol Enters v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985).

17.     Based on their review of thee Coal Lease, in an exercise of their sound business judgment, the Debtors have determined the Coal Lease is beneficial to their businesses and reorganization efforts and is necessary to sustain ongoing business operations.

18.     The Debtors depend on the Coal Lease as a profitable mining lease that enables the Debtors to obtain coal necessary to fund operations. The Debtors have concluded that the rental payment for the Coal Lease is competitively priced. Without the Coal Lease, the Debtors would be unable to operate substantial portions of their business.

19.     Pursuant to section 365(b)(1) of the Bankruptcy Code, if there has been a default under an executory contract or unexpired lease of a debtor, the debtor may not assume the executory contract or unexpired lease unless, at the time of assumption, the debtor: (a) cures or provides adequate assurance that it will promptly cure any defaults; (b) compensates or provides adequate assurance of prompt future compensation for actual pecuniary loss resulting from any defaults; and (c) provides adequate assurance of future performance under the contract or lease. *See* 11 U.S.C. § 365(b)(1).

20.     By this Motion, the Debtors seek authority to pay the Cure Payment in compliance with section 365(b) of the Bankruptcy Code over a 6 week period, reserving their right to pay over a ten week period as indicated above. In light of the scope of the Debtors' business operations, the Debtors believe payment of the Cure Payment is well justified.

{N3051766.1}

21.     The Debtors submit that Land Energy has sufficient assurance of the Debtors' future performance under the Coal Lease.  In particular, the Debtors have sufficient liquidity to perform under the Coal Lease.  Moreover, the Debtors have determined the Coal Lease is necessary to sustain their business operations during and upon emergence from Chapter 11.

Dated this 24th day of June, 2015

\s\ *Mark A. Mintz*
Mark A. Mintz

**OF COUNSEL:**

C. Ellis Brazeal III
**JONES WALKER LLP**
1819 5th Avenue North
Suite 1100
Birmingham, AL 35203
(205) 244-5237 Telephone
(204) 244-5400 Facsimile
ebrazeal@joneswalker.com

Mark A. Mintz (LA Bar No. 31878) *(Admitted Pro Hac Vice)*
Laura F. Ashley (LA Bar No. 32820) *(Admitted Pro Hac Vice)*
JONES WALKER LLP
201 St. Charles Ave., Suite 5100
New Orleans, LA 70170
(504) 582-8000 Telephone
(504) 582-8011 Facsimile
mmintz@joneswalker.com
lashley@joneswalker.com
*Attorneys for Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing MOTION FOR AN ORDER, PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE DEBTOR TO ASSUME UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY, AND (2) SATISFY CURE AMOUNTS IN RESPECT THEREOF was filed and served on those parties entitled to receive notice via this Court's CM/ECF system, and on the parties identified below via U.S. Mail, postage prepaid, this 24th day of June, 2015:

Land Energy, Ltd.
PO Box 581
Jasper, AL 35502.

*/s/ Mark A. Mintz*
MARK A. MINTZ (*Admitted Pro Hac Vice*)

{N3051766.1}

# Exhibit A

STATE OF ALABAMA        )

WALKER COUNTY        )

## COAL SURFACE MINING LEASE

This lease, made and entered into effective on the 31st day of May 2013, by and between **Land Energy, Ltd.**, hereinafter called the "Lessor", and **Birmingham Coal & Coke Company, Inc.** hereinafter called the "Lessee."

### WITNESSETH THAT:

Lessor, in consideration of the payment to it of the sums of money hereinafter stipulated, and in further consideration of the covenants of Lessee hereinafter expressed to be kept and performed, hereby grants to Lessee the right, to the extent of the interest of Lessor therein, to mine, only by the surface-mining method, coal from all seams in the coal group that includes the Jefferson seam which coal is extractable by the surface-mining method from the lands located in Walker and Marion Counties, Alabama, (hereinafter called "Premises") and more particularly described in Exhibit "A" attached to and made part hereof.

The rights herein granted are expressly made subject to the following terms, conditions, covenants and limitations.

1.    **SURFACE RIGHTS.**    Lessor does not own the mineral rights on all of the Premises and the rights herein are granted on the express condition and covenant that Lessee shall, at its own expense before mining any part of the Premises that Lessor does not own the mineral rights, obtain from the owner or owners of the mineral rights under said part of the Premises to be mined such rights to the mineral Premises as may be required to permit the mining operations herein contemplated.

2.    **ROYALTY.**

A.    **Production Royalty.**    Lessee shall, as rental for the rights herein granted, pay to Lessor not later than the 20th day of each month for all coal mined from the Premises during the next preceding calendar month a royalty rate of: For Surface Rights Only: three dollars and twenty-five cents ($3.25) per ton or Five percent (5%) of the Gross Sales Price, whichever is greater (as herein below defined) and For Fee Rights Only: six dollars and fifty cents ($6.50) per ton or Ten percent (10%) of the Gross Sales Price, whichever is greater (as hereinbelow defined) of all merchantable coal mined and sold, F.O.B. washer in the case of

1

washed coal, or F.O.B. mine pit or stockpile in the case of mine run coal, from the Premises during said preceding calendar month.

For purposes of this Section 2, the Gross Sales Price per ton of coal mined and sold from the Premises shall be the weighted average per ton selling price of all coal of comparable quality mined and sold by Lessee from the same mining operation.

**B.** **Determination of Coal Mined.** The amount of coal mined from the Premises shall be determined on the basis of the weights used by Lessee in billing Purchasers of such coal, unless Lessor, in its sole discretion, considers such method of measurement not to be representative of the actual amount of coal mined from the Premises, in which case the amount of coal mined from the Premises shall be determined by actual pit measurement conducted in accordance with methods mutually agreed upon in writing in advance by the parties hereto. Lessee shall maintain accurate monthly records of the amount of coal mined from the Premises. Lessor shall have the right to make timely pit measurements in accordance with generally acceptable engineering practices used by mining operators in the area, and if such measurements do not develop tonnage figures which coincide with those submitted by Lessee, and Lessor's and Lessee's tonnage figures cannot be reconciled, then the difference shall be submitted to arbitration as hereinafter provided. In determining by pit measurement the amount of washed coal mined from the Premises, due allowance shall be made for washer loss.

**C.** **Blended or Commingled Coal.** If coal mined from the Premises is Blended or commingled with coal mined elsewhere than from the Premises, the Gross Sales Price shall be deemed to be that price which the coal mined from the Premises would have sold for if not so blended or commingled. Lessor shall have the right, at its expense, to take and analyze representative samples of coal removed from the Premises and of any coal with which it may be blended or commingled for the purpose of verifying Lessee's determination of the Gross Sales Price.

**D.** **Sale to Related or Affiliated Parties; Further Processing**. In the case of coal used, or processed beyond the stage of washing it, by Lessee or by any person, firm or corporation related to or affiliated with Lessee in a transaction other than an arms-length sale, the Gross Sales Price shall be adjusted to that price the coal would have brought had it been sold on the open market in an arms-length sale to a non-related, unaffiliated entity.

2

**E.     Transportation and Handling Charges.**   In the case of coal mined from the Premises and sold F.O.B. some point other than the mine pit (or stockpile) or washer, the Gross Sales Price shall be determined by deducting from the price at which such coal is actually sold all transportation and handling charges beyond the washer in the case of washed coal, or beyond the mine pit (or stockpile) in the case of mine run coal, actually received by Lessee, as shown by invoices or other statements issued by such third parties. In the case of such transportation or handling performed by Lessee or by any person, firm or corporation related to or affiliated with Lessee, such transportation and handling charges shall not exceed the amount of charges which would have been incurred had such handling and transportation been performed by non-related, unaffiliated entities.

**F.     Dispute.**   Any dispute under this Section 2 as to any matter of fact, including, but not limited to, weights, prices or amounts of coal, transportation or handling charges, methods of measurement, or royalties to be paid hereunder, if not settled by mutual agreement of the parties hereto, shall be determined by arbitration as provided below.

**G.     Payment.**   All royalties hereunder shall be paid to Lessors in separate remittances at the following address:

> Land Energy, Ltd.
> P.O. Box 581
> Jasper, AL. 35502

Copy To:           J.H. Graham, Inc.
                   812 Airport Road South
                   Jasper, AL. 35501

Remittance of royalties provided for herein shall be accompanied by certificates signed by Lessee showing the total amount of coal mined from the Premises during the next preceding calendar month and the applicable Gross Sales Price, determined as provided above in this Section 2.

**3.     FORCE MAJEURE.**   If the mining of coal hereunder is prevented for any full calendar month during the initial or extended term of this lease by (a) any strike or work stoppage of miners which is general in the district in which the Premises are located (unless caused or brought on by Lessee's actions or failure to act); (b) war; (c) civil commotion or act of the public enemy; (d) act of God; or (e) restrictions or prohibitions of State or Federal government or agency thereof, the lost time shall serve to extend the term of this lease, for a period equal to the time lost.

3

4. **MANNER OF OPERATION.** Lessee agrees to mine from the Premises during the term of this lease, or any extended terms, all of the coal contained therein which can be economically recovered by generally accepted methods of surface mining specifically understood and agreed, however, that Lessee shall not be obligated to mine where by reason of terrain or inherent nature of conditions of depth, strata or thinness of coal seam, the removal of the coal is not economically feasible or practical.

This lease is subject to all leases, easements and other rights now existing for railroads, public or private roads, electric transmission or telephone lines, gas or other pipelines, cemeteries or for any other purposes affecting the Premises. Lessee shall not mine coal in those areas where such mining would interfere with or damage such roads, lines or cemeteries or other installations, or any lake or impoundment of water, now existing or hereafter created, constructed or caused by any public utility, governmental body or agency or public corporation.

5. **LESSEE INDEPENDENT CONTRACTOR.** It is expressly understood that Lessee is an independent contractor, and Lessor shall have no control or right to exercise any control whatsoever over Lessee, Lessee's employees or permitted subleases or assigns their operation under this lease. The right to accept mining plans or projections, the right of engineering inspection and the right to inspect Lessee's records herein reserved by Lessor are reserved solely for the purpose of enabling Lessor to verify amount of royalties due to be paid hereunder and to ensure the Lessor's retained interests in the Premises are protected and reserved, and shall not give or be deemed to give Lessor the right to exercise any control over Lessee, Lessee's employees or permitted subleases or assigns, or to advise or assist Lessee or Lessee's employees or permitted sublessees or assigns in Lessee's mining operations hereunder.

6. **RECLAMATION.** Lessee shall have the exclusive right to enter into and upon the Leased Premises for the purpose of establishing and maintaining vegetation as required by state and federal mining laws, regulations or orders. Lessor hereby agrees to give its consent to a top soil waiver or waivers for the Leased Premises in connection with the reclamation of the Leased Premises so long as such waiver or waivers are permitted by state and federal mining laws, regulations or orders. Lessor also hereby agrees to give its consent to land use changes for the Leased Premises in connection with the reclamation of same so long as such land use changes are permitted by state and federal mining laws, regulations or orders. Lessor agrees that

4

the Leased Premises will be reclaimed to the "undeveloped or no current land use" as specified by state and federal mining laws. Lessor agrees to promptly execute and deliver to Lessee upon request any documents which may be necessary in connection with any top soil waivers and / or land use changes for the Leased Premises in connection with the reclamation of same so long as such waivers and / or land use changes are permitted by state and federal mining laws, regulations or orders and Lessee has paid, in full, all applicable fees. Lessor also hereby agrees to allow Lessee to permit sediment basins as permanent water impoundments as permitted by state and federal mining laws and regulations.

It is understood and agreed that Lessee's liability under state and federal mining laws, regulations or orders for the full reclamation of the Premises may exist and continue beyond the termination or expiration of the term of this Lease and any extensions thereof. Should Lessee be required to periodically enter into and upon the Premises after the termination or expiration of the initial term of this Lease or any extensions thereof in order to achieve full reclamation and / or to obtain full and final release of all bonds placed upon the Premises, in accordance with the rules and regulations of the Alabama Surface Mining Commission, Lessor hereby gives its express consent for Lessee to do so. Lessor shall not engage in any activities or practices upon the Premises that would in any way hinder or prevent Lessee from obtaining full reclamation as required by state and federal mining laws, regulations or orders and the full and final release of all applicable bonds without the express written consent of Lessee and any appropriate regulatory authority.

7. **RESTORATION OF LAND CORNERS.** Lessee Agrees if in the course of its mining operations under this lease it removes, destroys, covers up, or mutilates any monument post or other object which was erected or placed to designate the corner or any other point on the boundary of the subject land and which is recognized, locally or generally, as a land corner, whether established by legally authorized surveyor or by other persons, Lessee will restore said land corner or boundary mark to its original location by a registered land surveyor at the expense of Lessee, except that it shall not be necessary for the corner or mark to be restored at the same altitude above sea level as its original position.

8. **NON-LIABILITY OF LESSOR AND INDEMNITY BY LESSEE.** Lessor shall not be held liable for any claims on account of or arising from or connected with any act or acts of Lessee on or in connection with the Premises or the exercise by Lessee of any of the

5

rights herein granted, or at any time or in any way growing out of mining operations hereunder by Lessee, including, without limitation of the generality of the foregoing, the following.

      **A.**    Any claim for damage which may accrue to the surface of the Premises or any improvements thereon, by reason of cracking or subsidence or otherwise.

      **B.**    Damages under the Alabama Workmen's Compensation Act, the Federal Black Lung Law, or any similar law or laws.

      **C.**    Liability imposed or sought to be imposed upon Lessor or Lessor's agents, servants, or employees, for injuries or death to persons or damages to property, either or both, on or in about the Premises or at any other location.

      **D.**    Claims for any default or failure by Lessee in compliance with the laws of the State of Alabama or otherwise in connection with the exercise of Lessee's rights hereunder.

      **E.**    Fines, suits, demands and actions of any kind or nature by reason of any breach, violation or nonperformance by Lessee of any condition hereof.

Lessee agrees to and does hereby indemnify, protect and hold harmless Lessor, and its agents and assigns against all claims, suits, demands, judgments, decrees, loss, cost or expense, including attorney's fees and court costs, which may arise in connection with or on account of any one or more of the claims described above.

      **9.**    **INSURANCE.**   Lessee shall procure and shall maintain during the term of the Lease, at its expense with insurance companies acceptable to Lessor, policies of insurance providing, at a minimum, the coverage's and limits specified, and complying with the other requirements stated below:

      (a)    Worker's Compensation in statutory amounts and Employer's Liability in accordance with applicable laws.

      (b)    Commercial General Liability Insurance for bodily injury, including death and property damage with a minimum coverage of $1,000,000 per occurrence.

      (c)    Comprehensive Automobile Liability, including owned, hired and non-owned automobiles, for Bodily Injury and Property Damage with a combined single limit of not less than $1,000,000 per occurrence for bodily injury and property damage claims.

      (d)    Excess Liability in Umbrella Form with a minimum limit of $1,000,000 each occurrence over the above required policies.

      (e)    Lessor shall be added as Additional Insured parties on the policies set forth in (b),

6

(c) and (d) above with respect to the performance of work or activities under this Agreement.

Each of the above required policies shall contain a provision whereby the insurance carrier will notify Lessor at least thirty (30) days prior to the effective date of cancellation, non-renewal or material change in any of said policies. Each of the above required policies shall name Lessor as additional insured under such policies. When requested, Lessee shall promptly submit to Lessor a certificate, signed by an authorized representative of the insurance carrier, listing the policies, coverage's and limits and certifying that the said policies shall be in effect for the time periods stated in the Certificate. The obligations for Lessee to procure and maintain insurance shall not be construed to waive or restrict other obligations of Lessee. Lessee, in its agreements with its contractors, shall require each contractor who performs work on the mine site to obtain and maintain in effect during the term of each contract, insurance policies providing the coverage's and limits and complying with other requirements that are imposed by this section.

10. **PAYMENT OF TAXES.**

A. **Taxes to be Paid by Lessor.** Lessor shall in accordance with law return for as valorem taxation the interest which it owns in the Premises and shall at such times as required by law pay all taxes or charges in the nature of ad valorem or ownership taxes thereon, except any so-called tonnage, license or privilege tax levied upon the severance, removal or mining of the coal therefrom.

B. **Taxes to be Paid by Lessee.** Lessee shall in accordance with law return for taxation all structures, machinery, equipment and other property placed by it in, under and upon the Premises, and shall at such times as may be required by law pay all taxes or charges in the nature of taxes thereon. Lessee shall also pay all so-called tonnage, license or privilege tax upon the severance, removal or mining of coal hereunder and all income, social security, and unemployment taxes which are, or during the term of this lease may be, imposed on Lessee or its employees, and any other taxes which may be required by law with respect to mining of coal hereunder or the sale thereof.

11. **COMPLIANCE WITH LAWS, RULES AND REGULATIONS.** Lessee agrees, in its operations on the Premises, to adhere to and comply fully with all laws, rules and regulations of the County, State and Federal government and all agencies or commissions of such governments now or any time during the term of this lease applicable or having jurisdiction

7

including, but not limited to, the Alabama Department of Environmental Management, the U.S. Army Corps of Engineers and every similar agency or commission now or hereafter established. In particular, but without limiting the generality of the foregoing, Lessee agrees to comply fully with all provisions of the Alabama Surface Mining Act of 1981 and of every other statute applicable to Lessee's operations on the Premises, now in force or hereafter adopted, and all rules and regulations promulgated thereunder. Lessee agrees to obtain, at its own expense and in its own name and not in the name of Lessor, all necessary permits under all applicable laws, rules and regulations, to provide at its own expense all bonds that may be required and, on request of Lessor, to furnish Lessor with written evidence that all such necessary permits and bonds have been obtained. Lessee further agrees to comply fully, at Lessee's sole expense, with all land restoration requirements now or hereafter imposed with respect to its operations on the Premises. Lessee hereby expressly agrees to indemnify and hold harmless Lessor from any and all liability whatsoever arising out of or connected with Lessee's failure to comply with any applicable laws, rules or regulations as contemplated by this Section 11.

  **12.** **REMOVAL OF EQUIPMENT.**

    **A.** **Right to Remove Equipment.** Upon the expiration of the term of this lease as provided in Section 16 hereof, or upon the termination of this lease as otherwise provided for herein, Lessee shall have the right, provided that all sums of money due Lessor by Lessee hereunder shall have been paid, to remove from the Premises all of Lessee's material, equipment, structures and installations placed by Lessee on the Premises.

  **13.** **ABANDONED WORKINGS.** It is recognized by Lessor and Lessee that there are or may be in the vicinity of, or in, under or upon, some or all of the Premises abandoned mine workings. Nothing contained herein, nor any other information, oral, in writing or by diagram, drawing or map, furnished by Lessor shall be construed as a warranty or representation of any kind as to the location or condition of any such workings. Lessee expressly assumes all risk of any kind whatsoever with respect to mining at or near such abandoned workings, and in addition to any other similar conditions contained herein, Lessee agrees to and does hereby indemnify and hold Lessor harmless against any and all claims of every kind in any way arising out of the presence of any such abandoned workings in the vicinity of, or in, under or upon, any or all of the Premises, or out of the condition of any such workings.

8

14. **ARBITRATION.** In the event of any dispute between the parties hereto as to a matter which, under the express terms of this lease, may be submitted to or determined by arbitration, each party agrees, upon notice in writing from the other requesting such action, to appoint a competent arbitrator, and if the two arbitrators appointed by the parties shall not agree with respect to the dispute, said arbitrators shall appoint a third arbitrator, who shall be a competent, independent professional mining engineer, not an officer or employee of either party hereof, or of any organization related to or affiliated with either party hereto, and the decision of the majority shall be final and binding on the parties hereto. In the event either party fails to appoint such arbitrator within ten (10) days after written request of the other party to do so, the party giving notice shall have the right forthwith to name the two arbitrators, who shall act with like effect as if they had been mutually chosen. If, after both parties have been named an arbitrator, the two arbitrators so named have not agreed with respect to the dispute within twenty (20) days after their selection and have not, within that time, appointed a third arbitrator, the Probate Judge of Walker County shall have the right to select the third arbitrator, such arbitrator to be a competent independent professional mining engineer. Each party shall pay the compensation of its arbitrator and other costs of the arbitrators shall be shared equally by the parties hereto. The authority of the arbitrators shall be limited to disputes involving matters which under the express terms of this lease may be submitted to or determined by arbitration.

15. **ASSIGNMENT.** This lease shall inure to the benefit of, and be binding upon, Lessor and its successors and assigns, but Lessee shall have no right to assign, transfer, or sublease any of its rights or duties hereunder, without the express prior written consent of Lessor, which consent shall not be unreasonably withheld.

16. **TERM OF LEASE.** This lease shall become effective on May 1, 2013 and shall be effective for a primary period of seven (7) years, terminating on the 30th day of April, 2020. Lessor hereby grants to Lessee the option to extend this lease for an additional two (2) year period by giving Lessor not less than sixty (60) days' prior written notice of the exercise of such option. In the event of any such extensions of said term, all provisions of this lease shall remain in full force and effect and such provisions shall apply fully during said extended term.

17. **TERMINATION FOR CAUSE.**

A. **Default in Payment.** If Lessee shall make any default in payment of any production royalty to Lessor under this lease, and such default shall continue for a period of ten

9

(10) days after written notice thereof shall have been given by Lessor to Lessee, then Lessor shall have the right at any time after said ten (10) days to terminate this lease, and all rights of Lessee hereunder shall thereupon terminate; providing, however, in the event of a dispute as to the amount of royalty due, the disputed amounts may be placed in escrow with a mutually acceptable escrow agent and this lease will not be considered in default for non-payment of royalty.

      **B.**    **Other Default by Lessee.** If Lessee shall fail to comply with any or all of the covenants, terms, conditions or limitations in this lease (other than failure to pay royalties) and Lessee fails to begin and continue good faith efforts to cure such failure within a period of thirty (30) days after notification of such failure has been given to Lessee, then Lessor shall have the right to terminate this lease at any time thereafter by giving Lessee written notice of such termination, and upon the giving of such written notice this lease and the rights herein granted to Lessee shall terminate.

      **C.**    **Other Events of Default.** If Lessee shall (1) apply for or consent to the appointment of a receiver, trustee or liquidator of itself or of all or a substantial part of its assets; or (2) be unable, or admit in writing, its inability to pay its debts as they mature; or (3) make a general assignment for the benefit of creditors; or (4) be adjudicated a bankrupt or insolvent or be dissolved; or (5) file a petition in bankruptcy or for reorganization or for an arrangement pursuant to the Federal Bankruptcy Act or any similar Federal or State law, now or hereinafter in effect; or (6) file an answer admitting the material allegations or consent to or default in answering, a petition filed against it in any bankruptcy, reorganization or insolvency proceeding, or corporate action shall be taken for the purpose of effecting any of the foregoing; or if an order, judgment or decree shall be entered, without the application, approval or consent of Lessee, by a court of competent jurisdiction, approving a petition seeking reorganization of Lessee or appointing a receiver, trustee or liquidator of Lessee of all or a substantial part of its assets, and such order, judgment or decree shall continue unstayed and in effect for any period of thirty (30) consecutive days; then Lessor shall have the right to terminate this lease at any time thereafter by giving Lessee written notice of such termination, and upon the giving of such notice, this lease and the rights herein granted to Lessee shall terminate.

Case 15-02075-TOM11    Doc 95    Filed 06/24/15    Entered 06/24/15 16:24:06    Desc Main
Document      Page 18 of 21

18.    **NOTICE.**    Any notice provided for or permitted herein to be given by either party to the other party shall be given in writing and shall be conclusively deemed to have been given upon deposit thereof in the United States mail, registered or certified mail (with effective date of receipt being the date of receipt as indicated on return receipt certificate), postage prepaid and addressed as follows:

      A.    **Lessor to Lessee**
           Birmingham Coal & Coke Company, Inc.
           912 Edenton Street
           Birmingham, AL. 35242

      B.    **Lessee to Lessor**
           Land Energy, Ltd.
           P.O. Box 581
           Jasper, AL. 35502

      **Copy To:**    J.H.Graham. Inc.
                812 Airport Road South
                Jasper, AL. 35501

11

**IN WITNESS WHEREOF**, the parties hereto have caused this agreement to be executed on the day and year first above written.


**LESSOR:** Land Energy, Ltd.
Land Energy, Inc.
It's Corporate Partner

By: _____
John T. Oliver, Jr.
Its: President


**LESSEE:** Birmingham Coal & Coke Company, Inc.

By: _____
Robert A. Lewis
Its: President


**STATE OF ALABAMA )**
Jefferson
~~WALKER~~ **COUNTY )**

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that **John T. Oliver, Jr.**, whose name as **President** of **Land Energy, Inc.**, is signed to the foregoing lease, and who is known to me, acknowledged before me on this day that, being informed of the contents of the lease, he
executed the same voluntarily.

Given under my hand and seal this 5 day of ~~May~~ June, 2013.

_____
Notary Public
My Commission Expires: 3/6/2015


**STATE OF ALABAMA )**

**JEFFERSON COUNTY )**

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that **Robert A. Lewis**, whose name as **President** of **Birmingham Coal & Coke Company, Inc.,** is signed to the foregoing lease, and who is known to me, acknowledged before me on this day that, being informed of the contents of the lease, he executed the same voluntarily.

Given under my hand and seal this 31 day of May , 2013.

_____
Notary Public
My Commission Expires: 7/5/16

12

## EXHIBIT "A"

### SURFACE RIGHTS ONLY

Township 12 South, Range 10 West, Walker County, Alabama

Section 19:    SW ¼ of NW ¼

Section 30:    NW ¼ of NW ¼, SE ¼ of NW ¼, SW ¼ of NE ¼,
                 NW ¼ of SE ¼, NE ¼ of SW ¼, SW ¼ of SE ¼

### FEE RIGHTS

Township 12 South, Range 10 West, Walker County, Alabama

Section 19:    NW ¼ of SW ¼, SW ¼ of SW ¼, SE ¼ of SW ¼,

Section 29:    NW ¼ of NW ¼, SW ¼ of NW ¼, NW ¼ of SW ¼,

Section 30:    NE ¼ of NW ¼, NW ¼ of NE ¼, NE ¼ of NE ¼,
                 SE ¼ of NE ¼,

### FEE RIGHTS

Township 12 South, Range 11 West, Marion County, Alabama

Section 13:    SW ¼ of SE ¼, SE ¼ of SW ¼,

Section 24:    NE ¼ of NW ¼, NW ¼ of NE ¼, S ½ of NE ¼,
                 SE ¼ of NW ¼, SE ¼, NE ¼ of SW ¼

13